EISENTRAUT, Administratrix, Respondent, vs. CORNELIUS
and another, Appellants.

*January 30—February 18, 1908.*

*Executors and administrators: Discovery of assets: Accounting:
Equity jurisdiction: Circuit courts: Jurisdiction over estates of
decedents: Multiplicity and circuity of actions: Judgments: Par-
ties: Relief awarded: Prejudicial error: Witnesses: Transactions
with decedents.*

1. During the pendency of the administration of an estate in the
county court an action in equity in the circuit court may be in-
stituted by an administratrix for a discovery of property of the
estate and an accounting, where it appears that the administra-
trix is ignorant of the amount, the condition, and the nature of
the estate and property claimed to be withheld by the defend-
ant under claim of ownership.

2. In such situation, although discovery in the county court may be
had pursuant to sec. 3825, Stats. (1898), yet the necessity of
bringing an action, either at law or in equity, to enforce deliv-
ery or restoration to the estate of property discovered, results
in such circuity and multiplicity of action that it is in itself
sufficient grounds for suing in equity.

3. During the pendency of the administration of an estate in the
county court the administratrix instituted an action in the cir-
cuit court for a discovery of the property of the estate and an
accounting. *Held*, that it was error to limit the relief awarded
to an adjudication of the amount the defendants were found to
have obtained from the estate of the deceased, without deter-
mining defendants' right to credits for any sums which they
claimed to have paid to the heirs of the deceased and upon
debts and claims against the deceased and his estate.

4. Such adjudication deprived the parties of the benefit sought to
be gained by action in the circuit court, namely, the avoidance
of a circuity and multiplicity of actions, and a final and com-
plete settlement of the whole controversy between the parties
having an interest in the subject matter of the action.

Where, during the pendency of the administration of an estate in
the county court, the administratrix institutes an action in the
circuit court for a discovery of the property of the estate and
for an accounting, the object of the action is to secure the cus-
tody of the assets of the estate so that they may be distributed
among those rightfully entitled to them, and hence, where some
of the heirs have released their rights to the defendants, it is

appropriate that such releasing heirs should be made parties to the action, so that their right to any portion of the estate can be litigated, if controverted by any interested party, to the end that, upon the final accounting, the defendants may be required to pay over to the administratrix the amount of the estate required for its administration and the payment of the amounts found due the other distributees.

6. In such case it is no objection to the adjudication of the rights of the parties that the administration of the estate in the county court is incomplete, since, if the administration in the county court has progressed to the stage where the amounts due have been ascertained, proof can be adduced in the circuit court to enable it to enter a judgment covering the situation, and, if time is required to carry the administration to that point, the circuit court can hold the proceeding in abeyance until such facts may be shown.

7. During the pendency of the administration of an estate in the county court the administratrix instituted an action in the circuit court for a discovery of the property of the estate and for an accounting. The proof disclosed that the property for which recovery was sought was held separately by the two defendants. *Held*, that it was error to award judgment that the plaintiff recover from the defendants jointly an amount equal to the total amount of property that both defendants were found to have obtained from the decedent.

8. In such case the court must ascertain the separate liability of each defendant and award judgment as to each accordingly.

9. Where, in an equitable action by an administratrix against an heir and her husband for discovery of property of a decedent's estate and an accounting, defendants were examined as witnesses for plaintiff as to their course of dealing with the decedent, and were required to give evidence of communications and transactions through which they obtained possession of the property in question and of the repayment of specific sums collected by them, it is error to exclude defendants' testimony covering the details of such transactions and communications.

APPEAL from a judgment of the circuit court for Clark county: JAMES O'NEILL, Circuit Judge. *Reversed.*

Plaintiff sues as the administratrix of the estate of Carl Nitzsche, deceased, for an accounting and to recover from defendants money, notes, securities, and property which it is alleged they wrongfully obtained from Carl Nitzsche.

The complaint alleges that Carl Nitzsche died November 7, 1902, leaving surviving him, as his heirs at law, his widow, six daughters, and two grandchildren, the children of a deceased son. The defendant *Theresa Cornelius,* wife of the defendant *Charles Cornelius,* is one of his daughters. It is alleged that the defendants secured this property by the exercise of undue influence over Carl Nitzsche and Amelia Nitzsche, his wife; that the plaintiff is unable to state with particularity the kind and amount of the money, securities, and property so secured by them; and that they retain this property, excepting certain portions paid to some of the heirs of Carl Nitzsche since his decease. The answer of the defendants admits that Carl Nitzsche was possessed of property in his lifetime, that the persons named in the complaint as his heirs are such, and that he left surviving him his widow, Amelia Nitzsche, and that the defendants are husband and wife; but they deny having wrongfully and unlawfully obtained any of the property of Carl Nitzsche. Upon the trial it appeared that Nitzsche was of foreign birth; that before his removal to Neillsville in June, 1901, he had lived for many years in Ozaukee county, Wisconsin; that the children living at the time of his death were the issue of a first marriage, and that the grandchildren were the children of a deceased son, also the issue of his first marriage; that one daughter, Wilhelmina, is feeble-minded and is confined in the home for the feeble-minded at Chippewa Falls; that Carl Nitzsche was over eighty-two years of age at the time of his death; that after the death of his first wife he married Amelia Nitzsche, with whom he lived up to the time of his death; and that there were no children as the issue of the second marriage.

It appears from the evidence that Mr. Nitzsche transferred $3,000 to *Charles Cornelius* on condition that he provide for the support of Wilhelmina during her life; that after the death of Mr. Nitzsche various amounts were paid to his daughters from the amounts owned by his widow, Amelia

Nitzsche; and that the expenses of last sickness, of funeral, for a tombstone, etc., were likewise paid. It also appears that after Amelia Nitzsche's death certain amounts were paid to various of the heirs by *Charles Cornelius* and that receipts therefor and for the amounts previously paid by Amelia Nitzsche were given him, and that releases were executed by some of these persons of all their claims to the estate of Carl Nitzsche. Two of these heirs also assigned to *Theresa Cornelius* their interests in the estate. *Charles Cornelius,* it is claimed, paid the expenses of the last sickness, the funeral, and a tombstone for Amelia Nitzsche. It does not appear that the grandchildren of Carl Nitzsche were given any share of his estate.

The court found that when Mr. Nitzsche moved to Neillsville both he and his wife were in feeble health and that he had purchased a home there at a cost of $3,100; that when he moved to Neillsville he owned notes, mortgages, bonds, and money in excess of the sum of $15,000; that the defendant *Charles Cornelius* was an affable man of pleasing address, that he was engaged in selling real estate and loaning money, and that he and his wife induced Carl Nitzsche to transfer to them and to Amelia Nitzsche for them all of his property, including his homestead and household furniture; that on September 25, 1902, the defendants induced him to convey his homestead to his wife, Amelia Nitzsche, with the understanding that she would convey the same to the defendants before her death, and that pursuant to this understanding she conveyed the homestead to the defendants seventeen days before she died. The court also found that for six months prior to his death Carl Nitzsche was physically so feeble that he was disabled from going beyond the house of the defendants, which was next door, and that during that time both he and his wife were subject to the will and control of the defendants; that the property which Mr. Nitzsche had turned over to the defendants was held by them as his confidential agents and trustees; that before Mr. Nitzsche's death

the defendants had obtained, by assignment, conveyance, and delivery to them and to the wife of Mr. Nitzsche, all of the property of the deceased, both real and personal, which was of the value of more than $15,000; that Amelia Nitzsche, before her death, had transferred and conveyed to the defendants all of the property, both real and personal, which had been conveyed to her by Carl Nitzsche. The court further found that by reason of these transfers the defendants thus became possessed of, and at the time of the trial held, all of the property owned by Carl Nitzsche when he removed to Neillsville, being at least $15,000; that defendants had come into full possession and control thereof from the time of Amelia Nitzsche's death; and that the defendants so obtained control and possession through undue influence. The court states that it is impossible to state accurately the amounts that came into defendants' hands; that the defendant *Charles Cornelius* had given information concerning but $6,000 and left the possession of the other property so obtained by himself and his wife unexplained; and that the defendants refused to account for the same and claimed to hold it as their own. The court did not make the accounting demanded by the plaintiff and charge the defendants separately with the amounts shown to have been received by them, nor did it give them credit for the amounts paid out to the heirs and for expenses against the estate. There was no proof in the case as to what steps had been taken in the administration of the estates of Carl and Amelia Nitzsche. The heirs of Carl Nitzsche were not made parties to the action.

The following is the agreement made between *Carl Nitzsche* and *Charles Cornelius* for the support of Wilhemina Nitzsche during her natural life:

"Neillsville, Wis., Oct. 6, 1902.

"This is to certify that I have received from Carl Nitzsche the sum of three thousand dollars, and for which sum I bind myself to support the daughter of Carl Nitzsche, namely, Wil-

helmina Nitzsche, who is now in the Home for the Feeble-Minded at Chippewa Falls, Wisconsin, during her life, and bind myself, my family and my heirs to do this as long as Wilhelmina lives; and should she not be able to remain always in the present institution, we will remove her to some other good place, or keep her in our family. It is hereby agreed that should Wilhelmina die before the money is all expended which I have received as above named, and should later receive from the bequest of Carl Nitzsche after his death, that all that is remaining from the money of Wilhelmina and her hereditary portion shall go to and be the property of *Charles Cornelius* and his family and to no one else. Herewith I bind myself.          CHARLES CORNELIUS."

The court awarded judgment jointly against the defendants to the effect that the plaintiff was entitled to recover $15,000, with interest thereon from March 20, 1903, the date of the death of Amelia Nitzsche. This is an appeal from the judgment.

For the appellants there was a brief by *Marsh & Schoengarth,* attorneys, and *James Wickham,* of counsel, and oral argument by *Mr. S. M. Marsh* and *Mr. Wickham.*

*F. E. Withrow,* attorney, and *E. C. Higbee,* of counsel, for the respondent.

SIEBECKER, J. This is an action in equity by the plaintiff, as administratrix of the estate of Carl Nitzsche, deceased, for a discovery of the property of his estate and for an accounting with the defendants. Since the administratrix alleges her ignorance of the amount, the condition, and the nature of the estate and property claimed to be withheld by the defendants under claim of ownership, she may institute this equitable action in the circuit court during the pendency of the administration of the estate in county court. Though discovery in county courts may be had under such circumstances pursuant to sec. 3825, Stats. (1898), yet the necessity of bringing an action, either at law or in equity, as exigency

may demand, to enforce delivery or restoration to the estate of property discovered, results in such circuity and multiplicity of action that it is in itself sufficient grounds for suing in equity. *Meyer v. Garthwaite,* 92 Wis. 571, 66 N. W. 704; *Burnham v. Norton,* 100 Wis. 8, 75 N. W. 304.

The plaintiff demands that the defendants make discovery and account for any money or property in their possession belonging to the estate of Carl Nitzsche, deceased. The trial court, however, did not proceed to an accounting between the parties, but limited the relief awarded to an adjudication of the amount the defendants were found to have obtained from the estate of the deceased, and entered judgment that plaintiff recover such amount from defendants for the benefit of the estate, without determining defendants' right to credits for any sums which they claim to have paid to the heirs of the deceased and upon debts and claims against the deceased and his estate. The court suggested that the question of such credits to defendants, if any should be allowed them on the amount they received from the decedent's estate, could not properly be determined in this action and must be litigated in county court in the settlement of the estate. Such a course would obviously deprive the parties of the very benefit sought to be gained by this equitable action in the circuit court, namely, the avoidance of a circuity and multiplicity of actions, and a final and complete settlement of the whole controversy between the parties having an interest in the subject matter of the action. It was held in *Gianella v. Bigelow,* 96 Wis. 185, 71 N. W. 111, that the jurisdiction of courts of equity "over estates, interests, and primary rights, purely equitable, and to administer equitable remedies, is nowhere lost merely because the interest, right, or remedy grows out of, or is connected with, the estate of a deceased person which is in course of administration." The circumstances of this case clearly make it a proper one for an equitable accounting in the circuit court, and it is proper that

when that court has entertained the cause it should retain it to settle the rights of all the parties interested in the litigation. This necessarily entitled defendants to litigate their claims respecting the allowance of credits for any sums they claim to have paid the heirs of the decedent out of the estate which came into their hands and for any other sums they have properly disbursed in payment of claims against the deceased or his estate. These claims of defendants are appropriately embraced within the issues of the action for an accounting between the representative of the estate and the defendants and can be most efficiently and expeditiously tried and determined in this action.

The argument is made that such a course of proceeding would involve issues between the defendants and some of the decedent's heirs who are not parties to the action. As to this the record discloses that the defendant *Charles Cornelius* avers that he has settled with three of such heirs and that they have released to him all their claims to the estate. This situation presents no obstacle to a full determination of the rights of all these parties arising out of these circumstances. The object of the action is to accumulate and secure the custody of the assets of the estate so that they may be distributed among those rightfully entitled to them. If some of the heirs have in fact released their rights to the defendant *Charles Cornelius* and he is found entitled to receive their shares of whatever estate may be found should be distributed, we can conceive of no more appropriate, expeditious, and efficient proceeding than to make such persons parties to this action and to litigate the question of his right thereto, if it is controverted by any interested party; and the court may upon a final accounting require defendants to account to the administratrix for any part of the estate found to be in their possession, and direct them to pay to the administratrix the amount thereof required for administration of the estate and the payment of the amounts found due the other distributees. It would be a

useless and an idle ceremony to require defendants to turn
over to the administratrix any property or money which may
be found due them upon distribution of the estate.

It is urged that such a disposition of the rights of the par-
ties cannot be accomplished because the administration of
the estate in county court is incomplete, and that the circuit
court.is therefore unable to ascertain what portion of the es-
tate will be required for the payment of debts and expenses
of administration. True, the record is silent as to these facts,
but if the administration in county court has progressed to
the stage where these amounts are ascertained, then proof
thereof can readily be adduced in circuit court to enable it
to enter a decree covering the situation, and, if time is re-
quired to carry the administration in county court to this
point, the circuit court can hold the proceeding in abeyance
until such facts may be shown.

The circuit court awarded judgment that plaintiff re-
cover from defendants jointly an amount equal to the total
amount of the property that both defendants were found to
have obtained from the decedents. This was erroneous. The
proof discloses that the property for which recovery is sought
was held separately by the two defendants. Under such cir-
cumstances, in an equitable action for an accounting, the
court must ascertain the separate liability of each defendant
and award judgment as to each accordingly.

As to the issues litigated and determined, the court found
that the defendants, by the exercise of undue influence over
the minds of Carl Nitzsche and his wife, induced them to
transfer and deliver to the defendants all of Nitzsche's prop-
erty, including the homestead, of a total value of at least
$15,000. The appellants urge as error on this branch of the
case, that, after plaintiff had examined them in her behalf
concerning communications and transactions they had had
with the decedents in the course of which they obtained pos-
session of some property, they were refused an opportunity

to give their evidence and explanation of such communications and transactions. The defendants were examined as witnesses in plaintiff's behalf as to their course of dealing with the decedent, and were required to give evidence of communications and transactions through which they obtained possession of the property in question and of the repayment of some specific sums collected by them. This examination covered in general terms all of the property that came into the defendants' possession, and referred to transactions between them and the decedents involving the receipt and payment of moneys realized out of the securities. When defendants offered to testify in their behalf and give the details of such communications and transactions covering the negotiations, the court excluded parts as incompetent because they related to personal transactions with the decedents and were not specifically covered by plaintiff's evidence. They were, however, the details of the transactions concerning which they had been examined by the plaintiff. Under these circumstances such evidence should have been admitted as part of the communications and transactions concerning which plaintiff had first examined them. The import and force of the evidence so offered cannot now be determined from the record. Its exclusion may have been very prejudicial, and especially so in view of the conclusion of the trial court that many transactions were not satisfactorily explained by the defendant *Charles Cornelius*. We are impressed that the court placed much stress upon the want of such explanations in arriving at the conclusion that defendants obtained decedents' property by undue influence, and are led to the conclusion that the finding of undue influence should not stand as final on the evidence now before the court, but that it should be set aside with directions to find upon this issue after all the evidence the parties may hereafter adduce has been received.

Appellants vigorously assail the finding that they received

the sum of at least $15,000 of the property and the estate of Carl Nitzsche. The finding of the court does not specify what property they received, aside from the specification that they received all of his real and personal property. This leaves the finding somewhat indefinite, since there is no finding specifying what property Mr. Nitzsche actually owned when he removed to Neillsville in June, 1901. We are persuaded that the trial should be reopened as to this issue for further consideration upon all the evidence that may be received in the case.

It is urged, in view of the fiduciary relation of the defendants with decedents, that the trial court in effect imposed on defendants the burden of disproving the charge of undue influence under its interpretation of the decision of *Davis v. Dean,* 66 Wis. 100, 26 N. W. 737. The record does not disclose that this burden was so imposed on appellants. The proper application of *Davis v. Dean, supra,* was considered and explained in *Winn v. Itzel,* 125 Wis. 19, 103 N. W. 220. We do not deem it necessary to elaborate the subject in view of the full discussion in this last case.

Upon the foregoing considerations the judgment of the trial court must be reversed, and the cause remanded with directions that the court proceed to bring in all the parties necessary to a complete determination or settlement of the questions involved in the controversy, that the court proceed to so frame the issues that the rights of all the parties having an interest in the subject of the action may be tried, that the court reopen the case for the reception of such other material evidence as may be produced by the parties and which was not introduced at the former trial, and that it make its findings of facts upon the issues after having received the evidence in the case.

*By the Court.*—It is so ordered.