Bogue and others, Executors, Respondents, vs. Laughlin, Treasurer, and the Village of Poynette, Appellants.

*March 14—April 23, 1912.*

*Taxation: Omitted property: Reassessment against executors after death of owner: Constitutional law: Evidence: Burden of proof: Notice: Waiver: General appearance before board of review: Tax as a debt: Filing claim against estate: Pleading: Counterclaim: Judgment against executors.*

1. In an action to restrain the collection of a tax entered against executors upon a reassessment of property of a decedent omitted from the tax rolls of previous years, the burden is upon the

executors to show whether the property so reassessed was omitted property or merely undervalued property, since the tax roll is under the statute *prima facie* evidence of the justice and regularity of the tax.

2. One who appears generally before a board of review in response to a notice issued by such board cannot afterwards object that such notice was not a six days' notice as required by statute.

3. Sec. 1059, Stats. (Supp. 1906: Laws of 1899, ch. 50), and secs. 1044–1044*d* (Supp. 1906: Laws of 1903, ch. 417), authorized the property of a decedent, which had been omitted from assessment in previous years during his lifetime, to be assessed against his personal representatives.

4. It is sufficient to justify such an assessment that the personal representatives have in their possession on May 1st personal property subject to taxation, and it is not necessary that it should be the identical property omitted or that the proof should show what specific items were omitted in the previous years. *Hayden v. Roe*, 66 Wis. 288, distinguished.

5. Under the law as it has existed since 1903 (Laws of 1903, ch. 417), the tax or liability for a tax on personal property is a legal charge against the owner.

6. The statute authorizing the assessment of omitted property against representatives of a deceased person is constitutional.

7. The statute gives ample power to assess the omitted property against the personal representatives, and the tax then becomes their debt, though with the power to reimburse themselves out of the estate, and there is no necessity to present such tax in county court as a claim against the estate.

8. An assessment which, from the whole record, was evidently intended to be made against executors, is sustained as such, though somewhat lacking in form.

9. Where an action is brought by executors of a deceased person against a village and its treasurer to restrain the collection of taxes assessed against such executors, defendants may counterclaim for the amount of the tax, and it is immaterial that the prayer is for judgment against plaintiffs personally. The judgment on such counterclaim against the executors should be in form *de bonis testatoris*.

APPEAL from a judgment of the circuit court for Columbia county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

This action was brought to restrain the collection of a tax levied in 1907 for the years 1904, 1905, and 1906 upon property alleged to have been omitted from the roll in such years,

and determine its validity, and recover possession of personal property seized under a warrant for the collection of such tax, prevent the commencement of other actions for the collection of the tax, and for general relief. The defendants answered by admissions and denials of the allegations of the complaint, and also by way of counterclaim set up the proceedings resulting in assessment of the tax upon the property omitted for the years in question. There was a reply to the counterclaim.

The court found that Hugh Sloan was a resident of the village of *Poynette* during the years 1904, 1905, and down to October 23, 1906, on which date he died; that thereafter his will was duly proved and allowed in the county court, and in December, 1906, letters testamentary thereon were duly issued out of said court to the plaintiffs, *Allan Bogue, Wm. Dunlop,* and *Chas. Mair,* who ever since have been and now are acting as executors of said estate; that said executors have at all times since their appointment resided within the village of *Poynette;* that said Hugh Sloan made to the several assessors of said village for each of the years 1904, 1905, and 1906 his sworn statement of valuation of the net average amount of money and credits owned by him in each of these years, other than debts secured by mortgages or conveyances of real estate, as follows: 1904, $5,500; 1905, $5,500; 1906, $5,000; that said statement was in a gross sum and not itemized, and constituted in each instance a gross and fraudulent omission and misstatement thereof to the knowledge of deceased; that said Hugh Sloan was not required by assessors to give and did not give said assessors or the several boards of review for said years, any statement of any particular items of which his said property was composed, nor any list of securities owned by him; that no other statement was required of him in either of said years; that the several assessors of said village placed said several amounts upon the assessment rolls of said village in said years and assessed and valued the same as the net average of moneys and credits of said Hugh Sloan liable to taxation for said years; that said statements

of money and credits for said several years were received by said assessors and no change made therein by said boards of review; that thereafter said amounts were spread upon the assessment and tax rolls of said village for said years respectively, as the net average amount of money and credits of said Sloan other than mortgages exempt from taxation; that said Sloan paid all taxes thereon in due season for the years 1904 and 1905, and the executors of his estate paid the tax thereon for the year 1906.

The court further found that on May 1, 1907, the plaintiffs as such executors had in their possession in said village the personal property belonging to the estate of said Sloan, no distribution thereof having been then made; that the time for presenting claims against the estate of said Sloan was limited to June 10, 1907; that the time fixed for hearing claims against said estate was June 11, 1907; that no claims were then presented to the county court against said estate; that in the year 1907 said executors made to the assessors of the village a statement of the value of the net amount of money and credits of said estate in their hands liable to taxation at $14,000; that they made no statements of property formerly owned by said Sloan liable to assessment in the years 1904, 1905, and 1906, and were not asked to make any such statements; that on June 25, 1907, the board of review of said village caused to be served upon said executors a notice to appear before said board on June 28th; that said executors appeared on said day and at several subsequent meetings of the board, and discussion of the matters of assessment and alleged "back taxes" was had; that on July 25, 1907, the executors were notified in writing that the board would be in session July 26, 1907, to hear evidence relating to the true value of the Sloan estate, for which it is liable to assessment for the years 1904, 1905, 1906, and 1907; that at the meeting of the board of review July 26, 1907, various persons, including two of the executors, were examined; that the executors offered no proofs as to the actual taxable credits of deceased or his

indebtedness during any of said previous years; that one of the executors declined to be examined except as to his own indebtedness to the estate; that on August 1st another meeting of the board was held, at which one of the executors was sworn; that at the conclusion of the meeting a motion was made by a member of the board that "by the evidence that is before us in regard to the Hugh Sloan estate, the assessor place upon the assessment roll against the executors (naming them) on which taxes have not been paid, for the yeär 1904 $12,240, and for the year 1905 $16,895, and for the year 1906 $20,495, and also raise the assessment for the year 1907 $12,500;" that on August 2, 1907, a notice was served on plaintiffs informing them that the board "had found and determined the fact to be that said estate should be assessed upon like account (the value of net amount of moneys, accounts, credits, etc.) for omissions for the year 1904 $12,240, for 1905 $16,895, and for 1906 $20,495," and that the executors might be heard respecting the same; that at the meeting of August 3d the plaintiffs appeared and asked for an adjournment, but were refused, and the board adjourned *sine die* that day; that thereafter the assessor entered the assessments upon the assessment roll of said village for 1907, in the column headed "moneys, accounts, credits, bonds, and other securities after deducting *bona fide* debts," in the following form:

|  | Net amount of moneys, credits, accounts, bonds, notes and other securities after deducting *bona fide* debts. |
| --- | --- |
| *Chas. Mair, W. Dunlop,* and *Allan Bogue,* executors of the estate of Hugh Sloan. | |
| | Value as fixed by board of review June 28, 1907, $25,000. |

"The value of June 28, 1907, was made arbitrarily and not upon evidence. The board of review, after taking the testimony of witnesses and be-

ing informed as to the facts, and after due con-
sideration of the same, determined and fixed the
valuation for the year 1907 at the sum of...... $26,500
And in accordance with their findings, such sum is
entered here accordingly.
Upon like evidence, and upon knowledge of the
facts, and upon due consideration, the board has
found and determined the fact to be that said es-
tate should be assessed upon like accounts for
omissions for the year 1904.................... 12,240
and for the year 1905...................... ........ 16,895
and for the year 1906........................ 20,495"

The court further found that no assessment for the year
1907 or preceding years was entered by the assessor prior to
the meeting of the board of review; that taxes were extended
upon the tax roll of said village for the year 1907 against said
assessed valuation omitted property as follows:

For the year 1904............................... $117 25
For the year 1905.............................. 264 57
For the year 1906............................. 393 50
And for the property of said estate for 1907...... 429 56

That no claim for the taxes in question was filed in the
county court against said estate, except that on December 26,
1907, a petition for this payment under sec. 1044d of the Wis-
consin Statutes was filed in county court by defendants, which
petition was heard by the court January 14, 1908, and denied
on.the ground that said section had no application to the facts
in the case, the deceased and the executors having at all times
been residents of the same taxing district and the property of
the estate was in the possession of the executors therein.

That no appeal was taken by the defendants from said or-
der dismissing said claim; that defendant sued an alternative
writ of *mandamus* out of this court [the circuit court], re-
quiring the county court to act upon said petition or show
cause to the contrary; that the county court made return to
said writ and this court quashed said writ upon said return

showing that the county court had decided the matter upon said petition; that no appeal was taken from the judgment quashing said writ; that thereafter and on February 25, 1908, the defendant treasurer began a suit in this court to recover of the plaintiffs the taxes upon said assessments, which suit is still pending, though no complaint has been served; that on the same day on which service of summons in said mentioned suit was made, but after service of summons therein, the defendant treasurer made a levy under his tax warrant on the following personal property, to wit: from said *Allan Bogue,* one organ, which was not the property of said *Bogue,* but belonged to his daughter; from *W. Dunlop,* one horse, one buggy, one cutter, belonging to said *Dunlop* individually; that none of said property so seized had ever belonged to Hugh Sloan or his estate; that the property so levied upon was of the value of about $400; that one of said executors had at that time personal property of his own within reach of said treasurer to the amount and value of $2,000.

That thereupon said treasurer advertised said property so levied upon for sale at auction to pay said taxes; that further levies were threatened by said treasurer and the attorneys who were then acting for him; that said executors had at all times after their appointment sufficient personal property belonging to said estate in their hands to pay all said taxes; that before January 1, 1908, said executors duly tendered to defendant treasurer the amount of tax levied for the year 1907; that he refused to receive said money and said tender has been kept good, and the amount of said tax paid into court by the plaintiffs; that there is no evidence that said executors had in their possession on May 1, 1907, any of the same money, notes, credits, or securities that said Hugh Sloan owned in the years 1904, 1905, and 1906.

That after their appointment said executors filed an inventory in said county court in the matter of the estate of said Sloan, which showed personal property in the form of moneys

in bank and promissory notes aggregating $31,321, all except $2,000 being of a taxable nature; that there is no evidence as to what specific items of personal property of said Sloan were omitted from assessment in 1904, 1905, or 1906.

That said Sloan during the years in question had no active business; he had retired, and did no work; that in addition to the suits already commenced by the defendants and levies made by them at the time of the commencement of the action, other suits and proceedings for the collection of said taxes were threatened by defendants, unless said taxes for 1904, 1905, and 1906 were paid.

And the court concluded that the board of review of said village intended to and did assess said sums as omitted property of the estate of said Sloan against the executors aforesaid; that the board of review of the village of *Poynette* for the year 1907 had no authority to levy an assessment against the plaintiffs for omitted property of said Sloan for the years 1904, 1905, and 1906; that the proceedings had by said board in that regard are illegal and of no force and effect; that plaintiffs are entitled to judgment perpetually restraining the defendants from enforcing the collection of said assessment for alleged omitted property; that plaintiffs are only entitled to such costs as are taxable in law actions, less the amount of costs taxable to said executors upon dismissal of the action begun by defendants February 25, 1908.

Judgment was entered accordingly in favor of plaintiffs adjudging void the assessment made in 1907 levying taxes for the years 1904, 1905, and 1906, and enjoining collection thereof, and for costs, from which judgment defendants appealed.

*Daniel H. Grady,* for the appellants, cited, *inter alia,* 27 Am. & Eng. Ency. of Law (2d ed.) 701; *Saint v. Welsh,* 141 Ind. 382, 40 N. E. 903; *Graham v. Russell,* 152 Ind. 186, 52 N. E. 806; *Reynolds v. Bowen,* 138 Ind. 434, 36 N. E. 756; *State ex rel. Davis & S. L. Co. v. Pors,* 107 Wis. 420,

425, 83 N. W. 706; *Warden v. Fond du Lac Co.* 14 Wis. 618, 620; *Peters v. Myers,* 22 Wis. 602; *Flanders v. Merrimack,* 48 Wis. 567, 4 N. W. 741; *Sturges v. Carter,* 114 U. S. 511, 518, 5 Sup. Ct. 1014; *Appeal of Seaman,* 135 Iowa, 543, 113 N. W. 354.

For the respondents there was a brief by *Rogers & Rogers* and *H. E. Andrews,* and oral argument by *H. B. Rogers.* They contended, *inter alia,* that the taxes for the years during which the property was claimed to have been omitted were not a lien or charge against the estate. *Evans v. Sharp,* 29 Wis. 564; *Simmons v. Aldrich,* 41 Wis. 241, 251; *Plumer v. Marathon Co.* 46 Wis. 163, 181, 50 N. W. 416; *Flanders v. Merrimack,* 48 Wis. 567, 572, 4 N. W. 741; *State ex rel. Davis & S. L. Co. v. Pors,* 107 Wis. 420, 425, 83 N. W. 706; *State ex rel. Vossen v. Eberhard,* 90 Minn. 120, 95 N. W. 1115. There was no proper assessment against the respondents as executors; the attempted assessment was against the estate. *Fond du Lac v. Estate of Otto,* 113 Wis. 39, 88 N. W. 917; *Hayden v. Roe,* 66 Wis. 288, 28 N. W. 186; 1 Desty, Taxation, 334; *State v. Collector,* 39 N. J. Law, 79; 1 Cooley, Taxation (3d ed.) 665, 666; *Dresden v. Bridge,* 90 Me. 489, 38 Atl. 545; *Sweetsir v. Chandler,* 98 Me. 145, 56 Atl. 584; *Eliot v. Prime,* 98 Me. 48, 52, 56 Atl. 207; *Wood v. Torrey,* 97 Mass. 321; *Cook v. Leland,* 5 Pick. 236; *Williams v. Holden,* 4 Wend. 223.

KERWIN, J.   Aside from some questions of practice, which will be referred to later, the main points raised by the assignments of error are: (1) Whether there was any property in the possession of the plaintiffs May 1, 1907, owned by Sloan in 1904, 1905, and 1906.   (2) What items of property, if any, were omitted in said years?   (3) Could there be a lawful reassessment of taxes in 1907 upon property alleged to have been omitted in 1904, 1905, and 1906, against the representatives of deceased?   (4) Whether, if there was a valid tax, re-

covery could be had only by filing claim in county court. (5) Was there a proper assessment against the plaintiffs as executors?

The material facts appear from the findings, which are set out in the statement of the case.

1. On propositions 1 and 2, as to whether there was any property owned by Sloan and omitted from the tax roll in 1904, 1905, and 1906 in the possession of the plaintiffs May 1, 1907, and the amount thereof, we think the omitted property was properly assessable against the executors, under existing statutes, though not in possession of the executors May 1, 1907. Sec. 1044*b*, Stats. (Supp. 1906), makes the tax roll *prima facie* evidence of the justice and regularity of the tax; hence the burden was upon plaintiffs in all respects, and especially in this case on the question whether the property so reassessed was omitted property or merely undervalued property. No evidence was offered tending to show that it was undervalued property, hence we must hold it was omitted property, because the contrary does not appear. There is no showing whatever, and no effort was made by the executors to show, that the property assessed as omitted property was not in fact omitted property, although they were before the board on notice several times between the 28th of June, 1907, and the 3d day of August, 1907, at which times the matter of the assessment of "back taxes" on the Hugh Sloan estate for 1904, 1905, and 1906 was considered, as will appear from findings set out in the statement of the case. On August 2, 1907, notice was served upon plaintiffs to the effect that the board of review had found and determined to assess for omissions in 1904, 1905, and 1906, and specifying the amount in each year, and that the executors, plaintiffs, might be heard respecting the same. The plaintiffs appeared on August 3, 1907, and asked for an adjournment, which was refused. Counsel for respondents insists that this notice was not sufficient because it did not give six days' notice as required by

statute. This objection is not tenable, since the plaintiffs appeared generally before the board in obedience to the notice. It is insisted by appellants that the evidence offered and received before the board of review on the part of defendants was ample to show that the property entered by the board was omitted property during the years in question. But regardless of this evidence, in the absence of any showing on the part of plaintiffs the *prima facie* case made by the assessment and tax rolls was sufficient. Sec. 1044*b,* Stats. (Supp. 1906: Laws of 1903, ch. 417). We conclude that the property assessed and entered upon the rolls for the years mentioned must stand as property of Sloan, deceased, omitted in said years.

2. The court below erroneously held and concluded that there could be no assessment of omitted property against the executors of a deceased person, on the ground that there is no statutory authority for such assessment, basing its judgment mainly upon *State ex rel. Ashland W. Co. v. Wharton,* 115 Wis. 457, 462, 91 N. W. 976; *Ashland Co. v. Knight,* 129 Wis. 63, 108 N. W. 208; *State ex rel. Vossen v. Eberhard,* 90 Minn. 120, 95 N. W. 1115. The foregoing Wisconsin cases merely go to the point that statutory authority is necessary to support a "back tax" assessment. This may be conceded, because we think our statutes are sufficiently broad to warrant the assessment of "back taxes" against the personal representatives of a deceased person, upon property of deceased which escaped taxation, when the personal representatives have personal property in their possession belonging to deceased subject to taxation.

Sec. 1059, Stats. (Supp. 1906: Laws of 1899, ch. 50), plainly gives authority to reassess property "omitted from assessment . . . by mistake or inadvertence." But it is argued that this authority does not apply to cases where the property was omitted during the lifetime of a deceased person and justify assessment after his death; that the statute does not authorize an assessment against an heir or personal representa-

tive having in his possession personal property of a decedent that escaped taxation during deceased's lifetime through omission from the tax roll. The Minnesota case (*State ex rel. Vossen v. Eberhard,* 90 Minn. 120, 95 N. W. 1115) is relied upon by respondents to support the judgment. This case rests upon sec. 1631, Gen. Stats. 1894 of Minnesota, which is similar to our statute (sec. 1059), and the Minnesota court grounds its decision upon the fact that, while the assessment is valid as to real estate, it is not valid as to personal property, because there is no personal obligation against the owner and the tax is not made a lien on the property. The court further says that there is a wise reason for the distinction, since it is the policy of the law to permit the free transfer and change of personal property. In *State ex rel. Davis & S. L. Co. v. Pors,* 107 Wis. 425, 83 N. W. 706, holding that an owner may be assessed for omitted personal property after he has ceased to be the owner, it is said:

"The principle at the foundation of these reassessment laws is that the owner of property is under obligation—some authorities say he is indebted—to the government to pay a sum proportioned to the property owned by him on May 1st of each year."

In other jurisdictions where the statute is no broader than ours, personal property omitted before the owner's death has been held assessable after his death. *Reynolds v. Bowen,* 138 Ind. 434, 36 N. E. 756, 37 N. E. 962; *Graham v. Russell,* 152 Ind. 186, 52 N. E. 806; *Comm. v. Sweigart's Adm'r* (Ky.) 73 S. W. 758; *Sturges v. Carter,* 114 U. S. 511, 5 Sup. Ct. 1014. It has also been held that even though a tax has not become a lien at the time of death, yet the fact that deceased had become personally liable to pay it when it should be levied made it a debt of decedent which could properly be paid by his executor out of his estate. 18 Cyc. 420; *In re Franklin,* 26 Misc. 107, 56 N. Y. Supp. 858.

In addition to sec. 1044, Stats. (Supp. 1906), which makes

property assessable to executors or administrators, ch. 417, Laws of 1903, adding secs. 1044*a,* 1044*b,* 1044*c,* and 1044*d,* provides that when personal property shall be assessed to an executor or administrator the person so assessed shall be personally liable for the tax, but that he shall have a remedy over against the beneficial owner and a lien on such property. Sec. 1044*b* makes the tax a debt against the owner. Under the foregoing statutes and others relating to taxation in this state we are convinced that the board of review had authority to assess the omitted personal property after the death of Sloan.

True, the court below found that the plaintiffs did not have in their possession on May 1, 1907, any personal property owned by Sloan in 1904, 1905, and 1906, and that there was no evidence as to what specific items were omitted from assessment in 1904, 1905, and 1906. But, as we have seen, it was sufficient that the plaintiffs had in their possession May 1, 1907, personal property subject to taxation, even though not the identical property omitted. The instant case is unlike *Hayden v. Roe,* 66 Wis. 288, 291, 28 N. W. 186, relied upon by respondents, since in that case the administrator was appointed after May 1st of the year of the assessment, and counsel sought to hold the assessment valid under the rule that the title of the administrator related back so as to include property as of May 1st. In the instant case it is not denied but that the plaintiffs were qualified and acting executors before May 1, 1907. Counsel for respondents cite several Wisconsin cases from 29 to 107 Wisconsin inclusive, which they argue are to the point that under our statutes the tax or liability for the tax cannot be a charge against the owner. But it is plain that these decisions are not applicable to the present situation under the statutes as they have existed since 1903.

Counsel further argue that the statutes authorizing the assessment of omitted property against the representatives of a deceased person as in the instant case are unconstitutional and

void. This contention is untenable. We conclude that the
assessment was valid.

3. It is next claimed by respondents that, even if valid, it
was necessary to file the claim against the estate before the
expiration of the time limited for filing claims. Under the
statutes heretofore referred to, ample power is given to assess
against the executors, and they are bound to pay the taxes and
reimburse themselves out of the estate in their hands. No
reason appears why a different rule should apply in regard to
omitted property and other property belonging to the estate,
and in each case, under our statutes, the assessment is against
the executors. As we have seen, the tax is a debt against the
owner, the person assessed liable for the tax, but he has a rem-
edy against the beneficial owner and a lien on the property
and can reimburse himself out of the property in his posses-
sion. Ch. 417, Laws of 1903, and sec. 1061, Stats. (Supp.
1906).

*Graham v. Russell,* 152 Ind. 186, 52 N. E. 806, is against
respondents on this contention. The court said, pages 193,
194:

"The contention of appellant's counsel, that the petition
ought to have alleged that the taxes in dispute had been filed
as a claim against Graham's estate prior to its final settlement,
is without merit. The facts disclose that the decedent had
for many years prior to his death failed to list and return for
taxation a large amount of his property, and at his death it is
charged he was liable for the payment of taxes, on account
of his said default, in the sum of $3,000 and over, which had
accrued and were due for state, county, and township pur-
poses.

"Taxes are not such claims which the law of this state
either requires or intends shall be filed for payment against a
decedent's estate. It is true that taxes, in the order pre-
scribed by the statute for the payment of liabilities of a de-
cedent's estate, come within the fourth provision of such or-
der of payment. . . . The duty, however, rests upon the ad-

ministrator or executor to pay the taxes due against the estate without their being filed or presented for payment."

4. It is further contended by respondents that the assessment was not properly made against the plaintiffs as executors of the estate of the deceased. A great many cases are cited from this court, but they are cases decided when the statutes on the subject were quite different from the present statutes. True, the entry against the executors on the tax roll was not in as good form as might be, but under our present statutes we think it sufficient as an assessment against the plaintiffs as executors. It is quite apparent from the whole record that the board intended to make the assessment against the executors. Sec. 1044a, Stats. (Supp. 1906), provides that failure to enter such assessment separately or to indicate the representative capacity or other relationship of the person assessed shall not affect the validity of the assessment. We think the assessment was valid against the plaintiffs as executors of Hugh Sloan, deceased.

5. Several questions of practice respecting the sufficiency of the complaint in equity, and whether the plaintiff had an adequate remedy at law, and whether such objections were waived by failure to demur or answer, are argued in the briefs of counsel. But since we hold that no case was made either at law or in equity, it is unnecessary to consider or decide such questions.

6. The defendants set up a counterclaim asking judgment dismissing the complaint and that they have judgment against the plaintiffs for the sum of $1,204.88, being the amount claimed due for taxes, and for general relief, together with costs. On the trial defendants asked permission to withdraw the counterclaim, which was denied and the counterclaim was permitted to stand.

Ch. 417, Laws of 1903, before referred to, makes the tax collectible from the executors personally and also makes it a

debt of the decedent. It being established that the taxes assessed against the plaintiffs are valid, judgment should have been entered in favor of the defendants for the amount of the debt. It is true that the counterclaim asks judgment against the plaintiffs—apparently a personal judgment. But this is immaterial under our system of pleading and practice. A judgment *de bonis testatoris* is a proper judgment in all cases where the executor is a party and the estate of decedent is liable for the debt. 18 Cyc. 1043 *et seq.; Woodward v. Howard,* 13 Wis. 557; *Hei v. Heller,* 53 Wis. 415, 10 N. W. 620; *Ladd v. Anderson,* 58 Wis. 591, 17 N. W. 320; *Borchert v. Borchert,* 141 Wis. 142, 123 N. W. 628. So in the present case judgment may be entered against the plaintiffs as executors, with direction that the same may be paid out of the property of the estate in the hands of the plaintiffs, since it appears from the record that there is ample property in the hands of the plaintiffs as executors to satisfy the claim.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded with directions to enter judgment in favor of the defendants upon the counterclaim as indicated in this opinion.